## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| JOHN E. LIPINSKI and JOHN W. TIBOLLA, individually and on behalf of all others similarly situated, | : CIVIL ACTION NO. 5:25-cv-1467 : : CLASS ACTION |
| *Plaintiffs*, | : **JURY TRIAL DEMANDED** |
| v. | |
| NORTH-EAST DECK & STEEL SUPPLY, LLC, | |
| *Defendant*. | |

## COLLECTIVE AND CLASS ACTION COMPLAINT

Plaintiffs John E. Lipinski and John W. Tibolla (collectively, "Plaintiffs"), individually, and on behalf of all persons similarly situated, file this Class and Collective Action Complaint ("Complaint") against Defendant North-East Deck & Steel Supply, LLC ("North-East" or "Defendant"), seeking all available remedies under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq*., the Pennsylvania Prevailing Wage Act ("PWA"), 43 P.S. § 165-1, *et seq*., and the Pennsylvania Wage Payment Collection Law ("WPCL"), 43 P.S. § 260.1, *et seq*. Plaintiffs also assert common law causes of action for breach of contract, restitution, and unjust enrichment.

## NATURE OF THE ACTION

1.    Plaintiffs bring this action against Defendant North-East for engaging in a systematic and clandestine scheme of wage abuse and wage and benefit shortages against its

1

hourly paid employees in Pennsylvania. This scheme involved, among other things, failing to pay prevailing wages to hourly employees working on prevailing wage projects by misclassifying such prevailing wage workers and by paying fringe benefits as though such employees were independent contractors in violation of the PWA and WPCL.

2.      Through these schemes, Defendant has misrepresented and falsely reported that it has complied with its obligations to pay prevailing wage workers in accordance with the applicable prevailing wage schedules that it is obligated to pay on the public works projects it has been contracted to perform.

3.      In addition, Defendant has required (or knowingly allowed) Plaintiffs and similarly situated workers to perform "off-the-clock work" in violation of the FLSA. Defendant also has failed to pay all overtime in violation of the FLSA and WPCL, among other statutory violations and breaches of common law duties and obligations.

4.      As a result of Defendant's systematic and clandestine scheme of failing to properly pay its hourly employees, North-East has violated federal and state laws, as alleged in the following claims: Count I (Violation of FLSA); Count II (Violation of the PWA, 43 P.S. § 165-1, *et seq*.); Count III (Violation of the WPCL, 43 P.S. § 260.1, *et seq*.); Count IV (Breach of Contract: Failure to Pay Timely All Wages and Benefits Earned); Count V (Restitution); and Count VI (Unjust Enrichment – Quasi Contract).

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 as this case arises from violations of 29 U.S.C. § 201, *et seq*.

6.      This Court has jurisdiction over the Pennsylvania state law claims through supplemental jurisdiction pursuant to 28 U.S.C. § 1367. The Pennsylvania state law claims are so

related to Plaintiffs' claims under the FLSA that they form part of the same case or controversy and arise from the same set of operative facts as Plaintiffs' claims under the FLSA.

7.    Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over each defendant by this Court permissible under the traditional notions of fair play and substantial justice.

8.    Venue is proper in this district pursuant to 28 U.S.C. § 1391. Most, if not all, of the acts complained of herein occurred in this district, and Defendant maintains its principal place of business within this district.

## THE PARTIES

9.    Plaintiff John E. Lipinski is an individual who resides in Lebanon, Pennsylvania. During the time relevant to this action, Plaintiff Lipinski worked as a crane operator for Defendant on certain public works projects, including the Nueweiler Lofts construction project in Allentown, Pennsylvania (herein, the "Project"). Pursuant to 29 U.S.C. § 216(b), Plaintiff has consented in writing to be a plaintiff in this action. Plaintiff Lipinski's consent to join this action is attached hereto as Exhibit A.

10.    Plaintiff John W. Tibolla is an individual who resides in Allenwood, Pennsylvania. During the time relevant to this action, Plaintiff Tibolla worked as a crane operator for Defendant on certain public works projects, including the Nueweiler Lofts construction project in Allentown, Pennsylvania. Pursuant to 29 U.S.C. § 216(b), Plaintiff has consented in writing to be a plaintiff in this action. Plaintiff Tibolla's consent to join this action is attached hereto as Exhibit B.

11.     Defendant North-East Deck & Steel Supply, LLC, is a Pennsylvania limited liability company located at 207 North Front Street, Allentown, Pennsylvania. Defendant is a recipient of various public works contracts, including the Nueweiler Lofts construction project in Allentown, Pennsylvania.

12.     At all times material to this action, Defendant has been engaged in commerce or in the production of goods for commerce as defined by the FLSA.

13.     Defendant's employees are engaged in interstate commerce and handle or work on goods that have been moved in and/or produced in commerce.

14.     Defendant's annual gross volume of sales made or business done exceeds $500,000.

15.     The unlawful acts alleged in this Complaint were committed by Defendant and/or its officers, agents, employees, or representatives, including as alter egos of one another, while actively engaged in the management of Defendant's businesses or affairs and with the authorization of Defendant.

16.     During all times relevant, Plaintiffs and similarly situated workers were employees of Defendant and were covered by the FLSA.

17.     During all times relevant, Defendant was and is an employer and/or enterprise covered by the FLSA.

**<u>BACKGROUND AND PREVAILING WAGE LAWS</u>**

18.     Public works projects funded by $25,000 or more of state funds are subject to Pennsylvania's PWA. Public works projects funded by $2,000 or more of federal funds are subject to the Davis-Bacon Act ("DBA"). Both the PWA and the DBA are intended to ensure that wages paid to workers on publicly funded construction projects comport with the wages that

prevail in that particular geographical region. The laws ensure a level playing field by requiring that every bidder on a publicly funded project pay the same wage rates to its workers, as required by a prevailing wage determination. Prevailing wage determinations are issued by the United States Department of Labor or the Pennsylvania Department of Labor & Industry, depending on whether the project is subject to federal or state prevailing wage requirements. Contractors bidding on public works projects are notified in the Request for Proposal that the project is subject to prevailing wage law requirements.

19.     When a contractor is awarded a public works project subject to the PWA or the DBA, the contractor agrees that it will pay its workers in accordance with prevailing wage laws. To meet this agreement and get paid for the project, the contractor must submit sworn certified payroll reports to the contracting government agency attesting that the contractor paid its workers on the project in accordance with prevailing wage laws. Thus, contractors on public works projects are required to use a portion of the funds received on the contract to pay their workers the applicable prevailing wage.

20.     Wage determinations specify the different wages a contractor must pay each classification or worker, such as heavy equipment operators, carpenters, laborers, etc., on a given project. Generally, classifications that entail a higher degree of expertise or training have higher wage determination rates. All workers must be paid the applicable wage determination rate for all wages and benefits earned in each classification each week. Each wage determination consists of both an hourly base rate and an amount allowable as a fringe benefit credit. The hourly base rate is the amount that is paid in wages directly to the workers.

21.     The fringe benefit component is intended to offset the employers' total wage obligation by crediting them for the costs incurred in providing benefits to prevailing wage

workers in lieu of cash wages. Contractors have three options for paying the fringe benefit component. They may pay the fringe benefit component to the worker entirely in cash wages. They may contribute the full amount of the component into bona fide fringe benefit programs, such as health insurance, retirement plans, or paid time off. Or they may use some combination of cash and contributions to bona fide benefits. The entire fringe benefit component must be used for the sole benefit of the worker who earned the money on the publicly funded project.

22.     There are limitations to the costs a contractor may assess to prevailing wage fringe benefit funds. For instance, contractors may not use prevailing wage fringe benefit funds to cover internal administrative fees, and the amount of fringe benefit money contributed into a bona fide fringe benefit program must be reasonably anticipated to cover the actual cost of the benefit. Prevailing wage fringe benefit money cannot be paid to employees as though they were independent contractors.

23.     Both the PWA and the DBA require employers to annualize fringe benefit credits taken for contributions to employee benefits, to ensure that the employers are only offsetting their prevailing wage obligations by the proportion of contributions actually attributable to time the employees spend on public works projects. Thus, an employer may only claim a fringe benefit credit for the actual hourly rate of contributions for all hours worked in a year by each worker on both prevailing wage and non-prevailing wage work. So, if an employee worked 1,500 hours on prevailing wage jobs and 500 hours on jobs not covered by the PWA or the DBA during the year, an employer's contribution of $2,000 to a particular employee's pension fund would only be creditable for $1,500, or $1.00 per hour, as a fringe benefit under the prevailing wage laws.

24.     Every week, contractors working on public works projects must submit certified payrolls, which are sworn certifications attesting that wages and fringe benefits were paid in accordance with prevailing wage laws, to the contracting government entity for every public works project as part of their application for payment.

### Plaintiffs' Experiences

25.     As part of a government development project in Allentown, a new multi-family and mixed-use development called Neuweiler Lofts was being constructed.

26.     Urban Residential Properties, LLC was the entity managing the Project and awarding the various subcontracting roles.

27.     Pertinent to Plaintiffs' claims, a prevailing wage schedule was generated in conjunction with the Project. The prevailing wage schedule sets forth each job classification and the hourly wage applicable to that job for the Project. The total compensation for each job classification was broken down into the hourly wage component and the fringe benefits component (a true and correct copy of the applicable prevailing wage schedule is attached hereto as Exhibit A).

28.     North-East was obligated to pay its workers on the Project at least the amount set forth in the prevailing wage schedule.

29.     North-East was also obligated to post the prevailing wage schedule prominently at the job site, but it failed to do so. *See* 34 Pa. Code § 9.103(7) (requiring, *inter alia*, "that the contractor and each subcontractor shall post for the entire period of construction the wage determination decisions of the Secretary … ***in a prominent and easily accessible place or places at the site of the work*** and at the places used by them to pay workmen their wages. The posted notice of wage rates shall contain the following information: … (iii) ***The crafts and***

*classifications of workmen listed in the Secretary's general prevailing minimum wage rate determination for the particular project*," and "(iv) *The general prevailing minimum wage rates determined for each craft and classification and the effective date of changes*.") (emphasis added).

30.    Plaintiffs worked for North-East as crane operators on the Project. In the prevailing wage schedule, a crane operator was classified as either Operator Class 01 or 01A depending on the size of the crane used. (*See* Exhibit C).

31.    Despite working as crane operators, Plaintiffs' pay stubs indicate that they were misclassified as "Iron Worker[s]" and were paid at the prevailing wage rate for Iron Workers, which is substantially lower than the rate for crane operators. Specifically, the prevailing wage schedule for the Project provides that Iron Workers are to be paid at a maximum rate of $67.64 per hour, which is broken down as $36.26 per hour in cash wages and $31.38 per hour in fringe benefits.

32.    According to the prevailing wage schedule for the Project, the rate for Operator (Building, Class 01A), which includes crane operators like Plaintiffs, is $74.72 per hour (plus a $0.75 per hour enhancement for operating a boom in excess of 225 feet), which is broken down as $44.82 per hour in cash wages and $29.90 per hour in fringe benefits (not including the $0.75 enhancement).

33.    North-East reaped a significant financial benefit by underpaying Plaintiffs and similarly situated workers, while depriving Plaintiffs of those same wages.

34.    North-East saved significant wages through the misclassification of Plaintiffs as iron workers as opposed to their actual jobs as crane operators.

35.    Upon information and belief, it is alleged that North-East misclassified employees from higher to lower paying categories enabling North-East to pocket a significant amount of money to which it was not entitled.

36.    Additionally, North-East paid the fringe benefits portion of Plaintiffs' wages as though they were independent contracts rather than employees.

37.    By misclassifying Plaintiffs as non-employee independent contractors, North-East avoided paying the employer's portion of payroll taxes on the fringe benefit component of Plaintiffs' hourly wages.

38.    This practice was a flagrant violation of Defendant's prevailing wage payment obligations as set forth in its contract with the awarding government agency, URBAN Residential Properties LLC, and the applicable prevailing wage schedule for the Project.

39.    North-East found other ways to deprive Plaintiffs and other similarly situated prevailing wage workers of all the wages to which they were entitled.

40.    For instance, as crane operators, Plaintiffs were required by OSHA safety standards to do safety checks on their equipment prior to starting work on their scheduled shifts. These safety checks took at least thirty (30) minutes to complete.

41.    Plaintiff Tibolla advised Defendant's management that he was required to perform pre-shift safety inspections of his equipment and that such tasks would take a minimum of thirty (30) minutes. However, North-East flatly refused to pay Tibolla and Lipinski for the time they spent performing the mandatory safety check.

42.    Moreover, North-East refused to pay Plaintiffs and similarly situated prevailing wage workers for anything more than forty (40) hours per week despite the fact that Defendant was aware that Plaintiffs spent a minimum of two-and-a-half hours per week performing pre-

shift safety checks, which should have been paid at an overtime rate of 1.5 times the applicable hourly rate of pay. Instead, Defendant required Plaintiffs to perform this essential work entirely off-the-clock.

43.     All current and former prevailing wage workers employed by North-East (including Plaintiffs) continue to suffer harm from Defendant's clandestine scheme to short and steal the Company's prevailing wage workers' wages and benefits.

## FLSA COLLECTIVE ALLEGATIONS

44.     Plaintiffs bring this action under the FLSA on behalf of themselves and all similarly situated current and former employees of Defendant who worked for Defendant and were not fully paid for their overtime work, which Defendant should have paid within the last three years.

45.     Plaintiffs bring this action as a collective action under the FLSA on behalf of the following persons:

> All current and former employees of North-East Deck & Steel Supply, LLC, who were not fully-paid since March 19, 2022 for all overtime compensation due for such employee's work in one or more workweeks because the employer did not pay the employee (1) for time worked (or for reporting to work as requested by Defendant to be available to work) prior to scheduled shifts, or (2) overtime compensation due on account of bonus compensation, or (3) the full overtime rate of pay (the "Collective").

46.     The employment policies, practices, and agreements of Defendant raise questions of fact common to the proposed collective group, including:

a.     Whether Defendant has engaged in a pattern or practice of permitting or requiring Plaintiffs and members of the proposed collective group to work in excess of forty hours per workweek for the benefit of Defendant and without appropriate compensation, in violation of the FLSA;

b.    Whether Defendant has engaged in a pattern or practice of failing to keep accurate records showing all hours worked by Plaintiffs and members of the proposed collective group, in violation of the FLSA;

c.    Whether the conduct of Defendant was willful;

d.    Whether Plaintiffs and members of the proposed collective group are entitled to lost wages, liquidated damages, and the other relief requested.

47.    The claims of Plaintiffs are similar to those of the members of the proposed collective group in that Plaintiffs have been subject to the same conduct as members of the proposed collective group, and Plaintiffs' claims are based on the same legal theory as members of the collective group.

48.    Plaintiffs' FLSA claims are maintainable as a collective action pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b).

49.    Plaintiff Lipinski's consent to join this action is attached hereto as Exhibit A.

50.    Plaintiff Tibolla's consent to join this action is attached hereto as Exhibit B.

## CLASS ACTION ALLEGATIONS

51.    Plaintiffs are individuals who, within the applicable period, were employed by North-East as prevailing wage workers.

52.    Plaintiffs bring this case as a class action pursuant to Fed. R. Civ. P. 23 on behalf of a Class defined as follows:

All current and former hourly wage employees who worked on prevailing wage contracts for North-East in the Commonwealth of Pennsylvania during the Class Period (the "Class").

53.    With respect to Plaintiffs' claims under the WPCL, the applicable class period is three (3) years prior to the filing of the Complaint or March 19, 2022, to the date of judgment in

this action.

54.     With respect to Plaintiffs' claims for breach of contract and quasi-contract (*i.e.*, restitution and unjust enrichment), the applicable class period is four (4) years prior to the filing of the Complaint or March 19, 2021, to the date of judgment in this action.

55.     The members of the Class are so numerous that joinder of all members is impracticable. At least forty (40) North-East employees worked on the Project during the Class Period, and there are hundreds of similarly situated current and former employees of North-East who worked on other prevailing wage projects in Pennsylvania during the Class Period and were deprived of their statutorily and contractually required prevailing wage rates of pay. These current and former employees are geographically dispersed throughout the Commonwealth of Pennsylvania and elsewhere. Given this large number of similarly situated prevailing wage workers and the systematic nature of Defendant's failure to comply with Pennsylvania statutory law and common law, the members of the Class are so numerous that the joinder of all members is impractical.

56.     Plaintiffs' claims are typical of the claims of the Class members because they were hourly wage employees who worked on prevailing wage jobs at North-East during the Class Period who, like the Class members, sustained damages, and continues to sustain damages, arising out of Defendant's systematic scheme to deprive prevailing wage workers of appropriate wages and fringe benefits.

57.     Plaintiffs will fairly and adequately protect the interests of the Class and all of its putative class members because there is no conflict between the claims of Plaintiffs and those of the Class, and Plaintiffs' claims are typical of the claims of the Class.

58.     Plaintiffs have retained counsel competent and experienced in complex, class

action litigation, including wage and hour class actions similar to the instant case.

59.    Common questions of law or fact exist as to all Class members and predominate over any questions solely affecting individual Class members. Among the questions of law or fact common to Plaintiffs and the Class are:

a.    Whether Defendant engaged in a common pattern, scheme, practice or course of conduct that shorted prevailing wage workers of the wages and fringe benefits earned and owed during the Class Period;

b.    Whether Defendant engaged in a common pattern, scheme, practice or course of conduct to breach its contract with Plaintiffs and the Class to pay the prevailing wage as promised in the form of actual wages and fringe benefits;

c.    Whether Defendant engaged in a common pattern, scheme, practice or course of conduct to violate the Pennsylvania Wage Payment and Collection Law by failing timely to pay all wages and benefits earned and owed during the Class Period to Plaintiffs and the Class members;

d.    Whether Defendant failed to keep true and accurate records for all hours worked by, and all wages and benefits owed to, Plaintiffs and the Class members in violation of Pennsylvania and federal law;

e.    Whether Plaintiffs and the Class members continue to suffer harm and damages as a result of Defendant's violations of statutory and common law;

f.    Whether Plaintiffs and the Class have suffered damages and the measure thereof; and

g.    Whether Defendant acted willfully in failing to timely pay all wages and benefits earned and owed to Plaintiffs and the Class as required by law.

60.    Class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because the foregoing questions of law and fact common to the Class predominate over any questions affecting only individual Class members.

61.    Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated individuals to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail. No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy. The Class is readily identifiable from Defendant's own employment records. Prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for Defendant.

62.    A class action is superior to other available methods for the adjudication of this controversy because the joinder of all members is impractical. Further, the amounts at stake for many of the Class members, while substantial, are not great enough to enable them to maintain separate suits against Defendant.

63.    Without a class action, Defendant will retain the benefits of its wrongdoing, which will result in further damages to Plaintiffs and the Class. Plaintiffs envision no difficulty in the management of this action as a class action.

**COUNT I**
**Violation of FLSA, 29 U.S.C. § 201, *et seq*.**
**(On Behalf of the Plaintiffs and the FLSA Collective)**

64.     Plaintiffs reallege and incorporate by reference each and every allegation set forth in the preceding paragraphs.

65.     The FLSA mandates that "no employer shall employ any of his employees … for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207.

66.     Defendant is subject to the wage requirements of the FLSA because it is an "employer" under 29 U.S.C. § 203(d).

67.     At all relevant times, each of the Defendant was, and continues to be, an "employer" engaged in interstate commerce and/or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203.

68.     During all relevant times, the members of FLSA Collective, including Plaintiffs, were covered employees entitled to the above-described FLSA protections. *See* 29 U.S.C. § 203(e).

69.     Plaintiffs and the FLSA Collective are not exempt from the requirements of the FLSA.

70.     Plaintiffs and the FLSA Collective are entitled to be paid overtime compensation for all hours worked over forty (40) in a workweek.

71.     Defendant's compensation scheme applicable to Plaintiffs and the FLSA Collective failed to comply with either 29 U.S.C. § 207(a)(1) or 29 C.F.R. § 778.112.

72.     Defendant knowingly failed to compensate Plaintiff and the FLSA Collective at a rate of one and one-half (1½) times their regular hourly wage for hours worked in excess of forty (40) hours per week.

73.     Defendant also failed to create, keep and preserve records with respect to work performed by Plaintiff and the FLSA Collectives sufficient to determine their wages, hours and other conditions of employment in violation of the FLSA, 29 U.S.C. § 211(c); 29 C.F.R. §§ 516.5(a), 516.6(a)(1), 516.2(c).

74.     In violating the FLSA, Defendant acted willfully and with reckless disregard of clearly applicable FLSA provisions.

75.     Pursuant to 29 U.S.C. § 216(b), employers such as Defendant, who intentionally fail to pay an employee wages in conformance with the FLSA, shall be liable to the employee for unpaid wages, liquidated damages, court costs, and attorneys' fees incurred in recovering the unpaid wages.

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, pray for judgment against Defendant as follows:

A.      Entering an order permitting this litigation to proceed as an FLSA collective action pursuant to 29 U.S.C. § 216(b);

B.      Entering an order requiring prompt notice, pursuant to 29 U.S.C. § 216(b), of this litigation to all potential FLSA Collective members;

C.      Entering an order requiring Defendant to pay all unpaid wages and overtime compensation owed and prejudgment interest to the fullest extent permitted under the law;

D.      Entering an order requiring Defendant to pay liquidated damages to the

fullest extent permitted under the law;

E.    Entering an order requiring Defendant to pay litigation costs, expenses, and attorneys' fees to the fullest extent permitted under the law; and

F.    Granting all other relief as this Court may deem just and proper

## COUNT II
### Violation of the PWA, 43 P.S. § 165-1, *et seq.*
### On Behalf Plaintiffs and the Fed. R. Civ. P. 23 Class

76.    Plaintiffs reallege and incorporate by reference each and every allegation set forth in the preceding paragraphs.

77.    Defendant misclassified the job category for the Plaintiffs and members of the Class.

78.    Defendant failed to pay Plaintiffs and members of the class in accordance with the applicable Prevailing Wage Schedule.

79.    Defendant is liable to Plaintiffs and members of the Class for violations of the PWA.

WHEREFORE, Plaintiffs and the Class pray for judgment against Defendant as follows:

A.    Determining that this action may proceed and be maintained as a class action;

B.    Awarding Plaintiffs and the Class pre-judgment interest at the statutory rate from the first date on which Defendant failed to pay earned and owed wages and fringe benefits to the prevailing wage workers as required by law;

C.    Reasonable attorney fees, expenses and costs of suit; and

D.    All other relief as this Court may deem just and proper.

## <u>COUNT III</u>
### Violation of the WPCL, 43 P.S. § 260.1, *et seq.*
### (On Behalf of Plaintiffs and the Rule 23 Class)

80.    Plaintiffs reallege and incorporate by reference each and every allegation set forth in the preceding paragraphs.

81.    The WPCL, 43 P.S. § 260.3, provides, in relevant part: "Every employer shall pay all wages, … due to his employees on regular paydays designated in advance by the employer. Overtime wages may be considered as wages earned and payable in the next succeeding pay period."

82.    In addition, the WPCL defines "wages" to include "fringe benefits or wage supplements." 43 P.S. § 260.2a. These "fringe benefits and wage supplements" must be remitted by the employer "within 10 days after such payments are required to be made to … to a trust or pooled fund" retirement account of the employee, or within 10 days after such payments are required to be made directly to the employe [*sic*] …." 43 P.S. § 260.3.

83.    By its actions alleged above, Defendant violated the provisions of the WPCL.

84.    In addition, Defendant's clandestine scheme fraudulently concealed this claim from Plaintiffs and the Class, and reasonable diligence and investigation would not have allowed Plaintiffs or the Class to discover the claim at an earlier date.

85.    As a result of the unlawful acts of Defendant, Plaintiffs and the Class have been deprived of compensation in amounts to be determined at trial, and are entitled to recovery of such amounts, including interest, liquidated damages, attorney's fees and costs pursuant to 43 P.S. §§ 260.9a and 260.10 of the WPCL.

86.    Defendant acted willfully in implementing its clandestine scheme and willfully failed to timely pay all wages and fringe benefits earned by and owed to Plaintiffs and the Class.

87.     The WPCL expressly contemplates class proceedings for claims of this sort: "Any employe or group of employes, to whom any type of wages is payable may institute actions provided under this act." 43 P.S. § 260.9a(a).

WHEREFORE, Plaintiffs and the Class pray for judgment against Defendant as follows:

    A.    Determining that this action may proceed and be maintained as a class action;

    B.    For damages according to proof at trial;

    C.    Awarding the Named Plaintiffs and the Class wages and pre-judgment interest at the statutory rate from the first date on which Defendant failed to pay earned and owed wages and fringe benefits to the prevailing wage workers as required by law;

    D.    Liquidated damages according to proof at trial;

    E.    Reasonable attorney fees, expenses and costs of suit; and

    F.    All other relief as this Court may deem just and proper.

## COUNT IV
### Breach of Contract: Failure to Pay Timely All Wages and Fringe Benefits Earned
### (On Behalf of Plaintiffs and the Rule 23 Class)

88.     Plaintiffs reallege and incorporate by reference each and every allegation set forth in the preceding paragraphs.

89.     Under Pennsylvania law, "wages" includes fringe benefits or wage supplements, whether payable by the employer from his funds or from amounts withheld from the employes' [*sic*] pay by the employer. 43 P.S. § 260.2a; *Braun v. Wal-Mart Stores, Inc.*, 24 A.3d 875, 897 (Pa. Super. 2011), *aff'd*, 106 A.3d 656 (Pa. 2014), *cert. denied*, 2016 WL 1278628 (U.S. Apr. 2016).

90.     Upon hiring and continuing the employment of Plaintiffs and Class members, Defendant offered and agreed through its written and oral representations, contracts, policies, promises and procedures that it would pay the prevailing wage to Plaintiffs and Class members on all projects with state and federal government agencies covered by the PWA or the DBA.

91.     These representations, contracts, policies, and promises were disseminated to Plaintiffs and the Class members in a manner to ensure that they were aware of the contents and terms and would reasonably believe them to be an offer of employment pursuant to the terms of the representations, contracts, policies, and promises.

92.     Plaintiffs and the Class accepted Defendant's offer of employment by commencing and/or continuing to work for Defendant after receiving the representations, contracts, policies and promises of Defendant.

93.     Defendant breached its contract with Plaintiff and the Class by not paying them timely for all wages and fringe benefits earned, owed and promised on jobs covered by the PWA or the DBA and by failing to pay wages according to Pennsylvania law.

94.     More particularly, Defendant designed, implemented, and maintained a scheme to underpay prevailing wage workers by paying for the fringe benefit portion of the required prevailing wage as though Plaintiffs and those similarly situated were independent contractors rather than employees.

95.     Defendant is liable to Plaintiff and the Class for the damages incurred as a result of Defendant's clandestine scheme and its corresponding breach of contract.

WHEREFORE, Plaintiffs, on behalf of themselves and the Class, pray for judgment against Defendant as follows:

A.      Determining that this action may proceed and be maintained as a class

action;

B.    Entering an order awarding damages for breach of contract according to proof at trial;

C.    Entering an order awarding pre-judgment interest from the earliest date of breach of contract but no later than 30 days after such wages and fringe benefits were earned and due; and

D.    Granting all other relief as this Court may deem just and proper.

**COUNT V**
**Restitution**
**(On Behalf of Plaintiffs and the Rule 23 Class)**

96.    Plaintiffs reallege and incorporate by reference each and every allegation set forth in the preceding paragraphs.

97.    Defendant, at all times material to this Complaint, was aware that Plaintiffs and the Class had not been paid wages and fringe benefits as Defendant had promised in representations, policies, and contracts, and as required by law under the PWA and DBA.

98.    Defendant, at all times material to this Complaint, was also aware that Plaintiffs and the Class had provided a great deal of labor to Defendant for which Defendant received inflated compensation from public agency contracts that it otherwise should have paid, and had agreed to pay, to the prevailing wage workers but instead had kept for itself.

99.    Defendant accepted and appreciated the benefit conferred by Plaintiffs and the Class but has never properly paid Plaintiffs and the Class for the labor provided.

100.    Defendant is liable to Plaintiffs and the Class for all amounts improperly withheld from the wages and fringe benefits owed to Plaintiffs and the Class.

101.    Defendant knew of and appreciated the benefit conferred upon it by the retention

of Plaintiffs' and the Class's property.

102.    Under the circumstances alleged, it would be inequitable for Defendant to continue to retain the property of Plaintiffs and the Class, entitling Plaintiffs and the Class to the relief set forth below.

WHEREFORE, Plaintiffs and the Class pray for judgment against Defendant as follows:

A.    Determining that this action may proceed and be maintained as a class action;

B.    Entering an order awarding Plaintiffs and the Class pre-judgment interest at the statutory rate from the first date on which Defendant failed to pay earned and owed wages and fringe benefits to the prevailing wage workers as required by law;

C.    Entering an order awarding Plaintiffs and the Class attorney fees, expenses, and costs of suit; and

D.    Granting all other relief as this Court may deem just and proper.

## **COUNT VI**
### **Unjust Enrichment – Quasi Contract**
### **(On Behalf of Plaintiffs and the Rule 23 Class)**

95.    Plaintiffs reallege and incorporate by reference each and every allegation set forth in the preceding paragraphs.

96.    By reason of the scheme set forth above, and having secured the work and efforts of Plaintiffs and the Class, Defendant enjoyed reduced overhead and increased profits arising from its public agency contracts. Defendant received compensation from these public agency contracts that should have been paid to the prevailing wage workers, including Plaintiffs and the Class. In addition, Defendant was able to underbid other contractors to secure additional public

agency contracts as a result of the clandestine scheme.

97.     Defendant has enjoyed and continues to enjoy the benefits arising from this scheme to the detriment of Plaintiffs and the Class, and it has retained and continues to retain such benefits contrary to the fundamental principles of justice, equity, and good conscience.

98.     Plaintiffs and the Class provided labor to Defendant based on the representation that Defendant was complying with the PWA and DBA when, in fact, Defendant had developed, implemented and maintained a scheme to thwart and shortchange its lawful obligations.

99.     Accordingly, Plaintiffs and the Class are entitled to judgment in an amount equal to the benefits unjustly retained by Defendant, including prejudgment interest.

WHEREFORE, Plaintiffs, on behalf of themselves and the Class, pray for judgment against Defendant as follows:

A.     Determining that this action may proceed and be maintained as a class action;

B.     Entering an order awarding Plaintiffs and the Class general damages according to proof at trial;

C.     Entering an order awarding Plaintiffs and the Class special damages according to proof at trial;

D.     Entering an order awarding Plaintiffs and the Class pre-judgment interest at the statutory rate from the first date on which Defendant failed to pay earned and owed wages and fringe benefits to the prevailing wage workers as required by law;

E.     Entering an order awarding Reasonable attorney fees, expenses and costs of suit; and

F.     Granting all other relief as this Court may deem just and proper.

## **<u>JURY TRIAL DEMAND</u>**

Plaintiffs hereby demand a trial by jury for all issues so triable.

Respectfully submitted,

Dated: March 19, 2025

*/s/Eric Lechtzin*
Eric Lechtzin
(PA ID # 62096)
Andrew Lapat
(PA ID # 55673)
**EDELSON LECHTZIN LLP**
411 South State Street
Suite N-300
Newtown, PA 18940
Telephone: (215) 867-2399
Facsimile: (267) 685-0676
elechtzin@edelson-law.com
alapat@edelson-law.com

*Attorneys for Plaintiffs and the*
*Proposed Collective and Class*